UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AARON SARNACKI,                    )
Derivatively on Behalf of          )
Smith & Wesson Holding Corp.,      )
            Plaintiff              )
                                   )
                                   )
            v.                     ) C.A. NO. 11-cv-30009-MAP
                                   )
MICHAEL F. GOLDEN,                 )
ET AL.,                            )
            Defendants             )


MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION FOR SUMMARY DISMISSAL OF
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT
(Dkt. No. 111)

March 12, 2014

PONSOR, U.S.D.J.


I.   INTRODUCTION

    Plaintiff, a shareholder of Smith & Wesson ("S&W"),

brought this derivative suit against the officers and

directors of S&W Holdings, Inc, alleging, inter alia, breach

of fiduciary duty.  Defendants filed a Motion to Dismiss on

July 1, 2011.  (Dkt. No. 29.)  The court, on March 29, 2012,

denied that motion, without prejudice, to allow Plaintiff to

conduct discovery into Defendants' Special Litigation

Committee ("SLC").  Sarnacki v. Golden, No. 11-cv-30009-MAP,

2012 WL 1085539 at *2 (D. Mass. March 29, 2012).

On June 28, 2013, Defendants filed this Motion for Summary Dismissal, contending that its SLC acted independently, in good faith, and reached a reasonable decision that litigation was not in the best interests of the corporation.  (Dkt. No. 111.)  Because the SLC acted appropriately, and its decision is thus entitled to deference, the court will allow Defendants' motion.

## II.  PROCEDURAL HISTORY

This suit is one of a number of legal actions arising from the same set of facts.  Between June 2007 and October 2007, Defendants, according to Plaintiff, issued false statements misrepresenting the demand for their products.  They purportedly made these statements while they were aware that S&W's inventory far exceeded demand.

On December 13, 2007, the first piece of litigation was filed in this court.  In re Smith & Wesson Holding Corp. Sec. Litig., No. 07-cv-30238-MAP (D. Mass.)("Securities Class Action.")  Two months later, in February 2008, Plaintiff filed a derivative suit in state court, which was consolidated with other, similar cases.  In re Smith &

<u>Wesson Corp. Deriv. Litig.</u>, Civil Action No. 2008-0099 (Hampden Co. Sup. Ct.).  A third matter, another derivative class action, <u>Bundy v. Golden et. al</u>, No. 09-cv-30174-MAP (D. Mass.), was filed with this court in 2009.

Those three cases have all been resolved.  The state suit was dismissed in 2009 as the plaintiffs failed to make a proper pre-suit demand on the Board of Directors.  On October 20, 2010, this court dismissed <u>Bundy v. Golden</u>, for failure to provide the S&W SLC, formed in June 2009, and discussed further below, sufficient time to investigate the claims.  <u>In re Smith & Wesson Holding Corp. Sec. Litig.</u>, 743 F. Supp. 2d. 14, 21-22 (D. Mass. 2010).

The Securities Class Action reached its terminus on March 25, 2011, when this court allowed Defendants' Motion for Summary Judgment.  <u>In re Smith & Wesson Holding Corp. Sec. Litig.</u>, 836 F. Supp. 2d 1 (D. Mass. 2011).  The court determined that no genuine dispute existed respecting the alleged misrepresentations, nor was there sufficient evidence indicating the necessary scienter.  <u>Id.</u>  On February 17, 2012, the First Circuit affirmed that decision. <u>In re Smith & Wesson Holding Corp. Sec. Litig.</u>, 669 F.3d 68

(1st Cir. 2012).

The case now before the court arose in the midst of all that litigation.  One week after the _Bundy_ case was dismissed, Plaintiff filed this derivative complaint in the District of Arizona, alleging that the SLC failed to conduct an independent evaluation of the claims.  _Sarnacki v. Golden, et al._, No. 10-cv-02316-SRB (D. Ariz.)  Plaintiff charged breach of fiduciary duty, waste of corporate assets, unjust enrichment, and an entitlement to contribution and indemnification.  On January 12, 2011, the parties jointly stipulated to transfer venue to this court, and on January 13, 2011, that transfer was allowed.  _Id._ at (Dkt. No. 16.)

Defendants, on July 1, 2011, filed their first Motion to Dismiss.  (Dkt. No. 29.)  On March 29, 2012, the court denied the motion, without prejudice, and ordered limited discovery to allow Plaintiff to investigate the adequacy of the SLC.  _Sarnacki v. Golden_, No. 11-cv-30009-MAP, 2012 WL 1085539 at *2 (D. Mass. March 29, 2012).  The court opined that deferral to the SLC was the one potential justification for dismissal at this early stage of the case.  _Id._

In response to that order, Defendants produced all

documents relied on by the SLC in its final report, company
board minutes respecting the formation and appointment of
the SLC, written discovery responses, and copies of
requested tolling agreements.  Plaintiff also deposed each
of the SLC members.[1]

Following this discovery, Defendants filed the pending
Motion for Summary Dismissal.  (Dkt. No. 111.)  The conduct
of the SLC is dispositve of the motion, and therefore a
detailed examination of its actions is necessary.

### III.   The SLC[2]

As a result of Plaintiff's allegations and the surge of
litigation, Defendant S&W established the SLC on June 22,
2009.  The SLC was explicitly tasked, on behalf of the Board
of Directors, with evaluating the viability of the claims.
The SLC comprised three members: Robert Scott, a director of
S&W since 1999; John Furman, a director of S&W since 2004;

---

[1] In June 2012, Plaintiff moved to compel additional
discovery, (Dkt. Nos. 49 & 52); the court denied that motion
on January 15, 2013.  (Dkt. No. 80.)

[2] Unless otherwise noted, the facts are drawn from
Defendants' Statement of Undisputed Facts (Dkt. No. 112),
Plaintiff's Response to the Statement of Undisputed Facts
(Dkt. No. 123), along with the documents referenced therein.

and I. Marie Wadecki, a director of S&W since 2002.  To
assist with the process, the SLC retained as counsel the
firm of Fierst, Pucci & Kane LLP.

The SLC's investigation occurred between August 2009
and December 2010.[3]  After initially reviewing the
shareholders' claims, the SLC began its inquiry by examining
the allegedly deceptive press releases, transcripts of
earning conference calls identified as false or misleading,
public filings identified as false or misleading, key
internal financial records, the audit committee charter,
audit committee minutes for FY 2008, Board of Directors
books for FY 2008, and the corporation's Articles of
Incorporation.

After this initial document review, the SLC turned to
material that was available from the Securities Class
Action.  Given the overlapping factual record existing
between the two cases, the SLC consulted with the Board of

---

[3] While the investigation was pending, Plaintiff's
counsel requested that the SLC pursue tolling agreements to
preserve potential claims.  The SLC, after determining that
it was in the best interest to do so, obtained such
agreements.  This tolled the relevant statute of limitations
until April 2011.

Directors' counsel, Greenberg Traurig ("GT"), to determine if any of the work done in that case could be used in the SLC's analysis. After the SLC independently reviewed the process by which GT conducted discovery, it decided that the discovery process was thorough and the documents would be relevant for its investigation. The SLC also reviewed transcripts and exhibits from the eleven depositions of key company officers and employees that were conducted by the plaintiffs in that suit.

In addition to these essential documents, the SLC attempted to interview the confidential witnesses whose statements spurred the Securities Class Action and whom Plaintiff relied upon in bringing the current suit. The SLC retained a private investigator who interviewed twelve of those confidential witnesses. The investigator then prepared a report of those meetings for the SLC. The SLC also met with the seven members of the Board of Directors who were not named defendants in the Securities Class Action.

To further assist with the investigation, the SLC retained Dr. Craig Moore, an economic expert, to analyze

relevant financial data.  His task was to determine whether the economic information available at the time of the allegedly fraudulent statements supported Plaintiff's theory.  Dr. Moore worked on similar issues in the Securities Class Action.

While analyzing the material, the SLC held seven formal meetings with counsel to discuss the evidence, review the applicable law, and decide on the best course of action. The initial meeting occurred on August 13, 2009, and the final meeting on December 5, 2010.  A draft report was then circulated, and finalized on December 16, 2010.

The final SLC report, eighty-two pages in length, concluded that insufficient evidence supported any of the claims against any named officer or director.  No misrepresentations had been made respecting demand, no evidence existed of an intent to defraud, and the financial evaluation did not support the allegations.  Not only was the likelihood of success on the merits low, the SLC reasoned, but the costs of litigation would be significant. As a result, the SLC resolved that it was not in the best interests of the corporation to pursue the claims.

IV.   <u>DISCUSSION</u>

A federal court looks to state law to analyze whether independent directors have the authority to discontinue a derivative suit.  <u>Burks v. Lasker</u>, 441 U.S. 471, 486 (1979). Nevada law, as this court previously found, governs this case.  <u>Sarnacki</u>, 2012 WL 1085539 at *2.  Nevada adopts Delaware's approach to resolve derivative litigation.  <u>See In re Amerco Derivative Litig.</u>, 252 P.3d 681, 697 (Nev. 2011).

Under Delaware law, a motion to terminate a derivative suit based on the recommendation of a SLC is considered a Motion for Summary Dismissal.  <u>Zapata Corp. v. Maldonado</u>, 430 A.2d 779, 787 (Del. 1981).  This is a "hybrid" motion, distinct from a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and is instead governed by "traditional summary judgment standards."  <u>Wylie v. Stipes</u>, 797 F. Supp. 2d 193, 196 (D.P.R. 2011), <u>quoting</u> <u>Zapata</u>, 430 A.2d at 788.  Thus, the facts must be examined in the light most favorable to the non-moving party, and the motion will only be allowed if there is no genuine issue of material fact.  Fed. R. Civ. P.

56.[4]

To determine whether dismissal of a case is appropriate based upon the recommendation of a SLC, Zapata requires the court to apply a two-step framework. 430 A.2d 788. First, the court must ask whether the SLC was independent and acted in good faith and upon reasonable grounds in reaching its conclusion. Id. at 788. The moving party shoulders the burden of proof. See Peller v. The Southern Co., 707 F. Supp. 525, 527 (N.D. Ga. 1988).

If the court is satisfied that the SLC was independent and acted reasonably and in good faith, it has a choice: it may either end the analysis and defer to the SLC's recommendations, or it has the discretion to proceed to Zapata step two. Zapata, 430 A.2d at 789. Here, the court may apply its own business judgment and examine whether litigation is in the best interest of the company. Id.

---

[4] Even if the court viewed this filing as a traditional Motion to Dismiss, it would use its discretion, given the discovery period and the documents provided, to convert it to a Motion for Summary Judgment. See Rivera v. Centro Medico de Turabo, Inc., 575 F. 3d 10, 15 (1st Cir. 2009)(citation omitted)("[I]f matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment.")

Step two permits a court to intervene where the SLC has met
the technical requirements of step one, but reached a result
that was "irrational" or "egregious."  Carlton Inv. v. TLC
Beatricte Int'l Holdings, Inc., No. Civ. A. 13950, 1997 WL
305829 at *2 (Del. Ch. May 30, 1997).

A.   Zapata Step One: Independence, Good Faith, and
     Reasonableness

     The first Zapata factor asks whether an independent SLC
made a reasonable decision in good faith.  Plaintiff
disputes both aspects of this analysis, and each will
therefore be addressed in turn.

     1.   Independence of the SLC

     To be independent, a SLC's decision must be based "on
the merits of the issue rather than being governed by
extraneous consideration or influences."  Kaplan v. Wyatt,
499 A.2d 1184, 1189 (Del. 1985).  A number of factors are
relevant, including:

> (1) a committee member's status as a defendant, and
> potential liability; (2) a committee member's
> participation in or approval of the alleged
> wrongdoing; (3) a committee member's past or
> present business dealings with the corporation; (4)
> a committee member's past or present business or
> social dealings with individual defendants; (5) the

number of directors on the committee; and (6) the "structural bias" of the committee.

In re Oracle Sec. Litig., 852 F. Supp. 1437, 1441 (N.D. Cal. 1994), citing Kaplan, 499 A.2d at 1189.  This inquiry is highly fact specific and centers on whether any member, "for any substantial reason, [is] incapable of making a decision with only the best interests of the corporation in mind." In re Oracle Deriv. Litig., 824 A.2d 917, 938 (Del. Ch. 2003)(emphasis in original).

Plaintiff's arguments are, in essence, three-fold.[5] First, the SLC members are named Defendants in the case and, therefore, face a significant prospect of liability. More concretely, as members of the audit committee, Furman and Wadecki were involved in approving certain statements that Plaintiff alleges were fraudulent.  Thus, they had an incentive to find the claims wanting.  See Mills v. Esmark, Inc., 544 F. Supp. 1275, 1283-84 (N.D. Ill. 1983).

---

[5] In his memorandum, Plaintiff offers five separate lines of attack against the independence of the SLC.  (Pl's Reply Mem. 16-28, Dkt. No. 121).  However, the arguments either speak to the good faith and reasonableness aspect of the analysis, or are subsumed into these broader topics. While the court has considered each point, they are most clearly addressed under three headings.

The problem is that merely naming a SLC member as a Defendant, absent <u>specific</u> evidence targeting his or her neutrality, does not disqualify him or her from serving on a SLC. See <u>Kindt v. Lund</u>, No. Civ. A. 17751-NC, 2003 WL 21453879 at * 3 (Del. Ch. May 30, 2003). Nor does an individual's approval of the challenged actions eradicate independence. See <u>Lewis v. Anderson</u>, 615 F.2d 778 (9th Cir. 1979)(finding that a SLC member who approved the challenged action was still "independent" because, <u>inter alia</u>, he did not receive any personal benefit from the decision nor had any inherent bias); <u>Kaplan</u>, 499 A.2d at 1189 (stating that the presence on the board of an individual who approved the challenged act is not enough to compromise the SLC's independence).

Here, no evidence supports Plaintiff's assertion that the three members were biased, nor that they were significantly involved in making the allegedly fraudulent statements. At its core, Plaintiff simply lists the duties of the audit committee and then concludes that the two SLC members who also served on that body were compromised. However, nothing in the record actually ties

these <u>specific</u> members to the <u>specific</u> accusations in the case. Absent such facts, this court cannot conclude that the members were incapable of assessing the merits of the complaint fairly.

Plaintiff's next argument is that the SLC members were prejudiced against Plaintiffs' claims before the investigation occurred. The SLC members filed motions to dismiss in the shareholder derivative suit and the <u>Bundy</u> actions, thereby revealing their positions on the merits prior to the investigation. The SLC members also testified in their depositions that they had formed opinions on the claims <u>before</u> their formal analysis. <u>See</u> (Pl's Reply Mem. 14-16, Dkt. No. 121).

This contention is not supported by the facts. The two motions referenced by Plaintiff did not, in fact, address the merits of the suit. Instead, they sought dismissal based on procedural and pleading deficiencies. <u>See</u> <u>Bundy v. Golden</u>, No. 3:09-cv-30174, Defs' Mot. to Dismiss, (D. Mass.); <u>In re Smith & Wesson Holding Corp.</u> <u>Deriv. Litig.</u>, No. 2008-00099, Defs' Mot. to Dismiss, (Hampden Co. Sup. Ct. Mass.) The motions cannot be

construed as prejudgment of the merits.[6]

Furthermore, Plaintiff mischaracterizes the SLC members' deposition testimony.  The members stated that prior to the full investigation, a preliminary analysis into the Securities Class Action occurred.  As a result of that brief investigation, it <u>appeared</u> that the claims were without merit.  Nonetheless, the SLC members emphasized that they had not drawn any formal conclusions before the SLC was formed.  <u>See</u>, <u>e.g.</u>, (Furman Dep. Tr. 21-23, Dkt. No. 114, Ex. 11).

Finally, Plaintiff argues that the SLC relied on biased advisors whose interests conflicted with the SLC's. In utilizing the economic expert retained for the Securities Class Action and relying on the attorney in that case, GT, to obtain documents, the SLC (Plaintiff argues) essentially bound itself to the interests of the Board of Directors.  While the SLC should have been focused on a neutral evaluation of the merits of the claim, Plaintiff contends, it instead relied on

---

[6] If accepted, this argument also has the potential to curtail an individual's ability to invoke his or her legal rights.

individuals whose goal was to escape any liability.

This final argument falls flat in the face of strong evidence of the SLC's independence.  Any reliance on GT and other experts was reasonable under the circumstances given the significant factual overlap between the two cases.  Crucially, the SLC members independently reviewed the process GT used to conduct discovery before determining the documents obtained through that process were reliable.  The SLC then expanded its investigation beyond those documents where appropriate.[7]

A final note is necessary.  <u>Even if</u> Plaintiff's arguments did have merit, he has, as a matter of law, tacitly conceded the independence of the SLC by making a demand on the board.  In embarking on this litigation, Plaintiff had a choice: to plead that a demand on the Board of Directors was excused because of a lack of independence, or to wait for the Board, through the SLC, to conduct its investigation.  In taking the latter path,

---

[7] Morever, this argument more accurately addresses the reasonableness of Defendants' investigation.  As discussed below, no persuasive evidence suggests that the investigation was anything but thorough and credible.

Plaintiff tacitly conceded that the majority of the board was independent and capable of investigating the matter. See In re Smith & Wesson Corp. Deriv. Litig., 743 F. Supp. 2d at 14, 18 n.3 (stating that "by issuing a demand rather than pleading that demand was excused, Plaintiffs have tacitly conceded the independence of a majority of the board to respond.")(internal citations and quotations omitted); Spiegel v. Buntrock, 571 A.2d 767, 775 (Del. 1990). This argument further justifies the court's conclusion that the SLC was an independent, unbiased entity.

   2.   Good Faith and Reasonableness of the SLC

   Zapata also requires an evaluation of whether the SLC acted in good faith and undertook a reasonable investigation. Here, "the court does not take an independent look at the merits of [the] lawsuit, but must find that the Special Committee's consideration of the merits of the claims was reasonable." Katell v. Morgan Stanley Group, Inc., Civ. No. 12343, 1995 WL 376952 at *12 (Del. Ch. June 15, 1995). In other words, the analysis centers on the SLC's process, rather than the substance of

its determination.  See Carlton, 1997 WL 305829 at *2.

In reviewing the thoroughness of a SLC's determination, courts have considered the documents the SLC relied upon, the witnesses interviewed, depositions reviewed, and the availability of other evidence the SLC could have considered.  See, e.g., Grafman v. Century Broad. Corp., 762 F. Supp. 215 (N.D. Ill. 1991).  Where the SLC thoroughly examines the material available, its decision will generally be affirmed.  Id.  On the other hand, where a SLC fails to investigate the critical transactions forming the basis of the complaint or ignores essential evidence, including financial data, courts have been more inclined to find a genuine dispute over the SLC's process.  See, e.g., London v. Tyrrell, 36 Del. J. Corp. L. 359, 2010 WL 877528 at *17-21 (Del. Ch. 2010).

Plaintiff primarily relies on two arguments to challenge the reasonableness of the SLC.[8]  First, Plaintiff charges that the SLC unreasonably abdicated its investigation to outside counsel.  Plaintiff specifically

_____

[8] Again, while Plaintiff presents a number of arguments in this section, they are engulfed by these two, broader contentions. (Pl's Reply Mem. 28-34, Dkt. No. 121)

-18-

focuses on: the SLC members' failure to recall significant details at their depositions (including their failure to recall investigating their own conduct, the scope of the assignments given to experts, and the scope of documents reviewed from the Securities Class Action); the SLC's failure to delay the investigation until document discovery was completed in the class action; the SLC's failure to promptly acquire tolling agreements; and its failure to ensure that those tolling agreements were adequate.  In Plaintiff's view, the SLC members improperly, unreasonably, and in bad faith allowed outside counsel to control the entire investigation.

Plaintiff's claim that the SLC abdicated its authority to counsel lacks support.  Indeed, other than lapses in memory during the depositions of the SLC members, no evidence backs Plaintiff's "abdication" argument. Instead, the tasks delegated to counsel, such as obtaining advisors and collecting and culling documents, are precisely those that are appropriate to delegate.  <u>See</u>, <u>e.g.</u>, <u>In re Take-Two Interactive Software, Inc. Deriv. Litig.</u>, No. 1:05 Civ. 5279, 2009 WL 1066251 at *6-7

(S.D.N.Y. 2009).  The SLC members meanwhile reviewed all of the records, conferred with counsel where necessary, and were the individuals who ultimately reached the final decision.  <u>See</u>, <u>e.g.</u>, (Wadecki Dep. Tr. 123, Dkt. No. 114, Ex. 10)("Q: Did you each review the same set of documents that were provided to the SLC from your counsel? A: Yes); (Furman Dep. Tr. 130, Dkt. No. 114, Ex.11)("[C]onclusions, in terms of the SLC's conclusions, were our conclusions."); <u>see also</u> (SLC Final Rep., Dkt. No. 114, Ex. 1); (Pucci Aff., Dkt. No. 114, Ex. 8.)  If anything, the role that counsel played here actually undermines Plaintiff's point, as obtaining and relying on counsel further illustrates the seriousness with which the SLC approached this investigation.  <u>Grafman</u>, 762 F. Supp. at 220 ("Another indicia of good faith and reasonableness of the investigation is the use of capable counsel.")

Plaintiff's second argument centers on the scope of the SLC's examination.  In relying on the evidence produced in the Securities Class Action, the SLC, in Plaintiff's view, unreasonably limited its analysis.  Specifically, Plaintiff contends that the SLC never

expanded the scope of documentary evidence, never requested additional documents from outside directors, relied on depositions that were insufficient for SLC purposes, did not follow-up with witnesses from the Securities Class Action, and, until the complaint was filed, failed to interview the directors who were not defendants in the Security Class Action.  The SLC also relied on experts and counsel from the Securities Class Action who were charged with defending the corporation. In limiting its investigation in this manner, the argument runs, the SLC did not undertake a good faith, reasonable look into the claims.

Plaintiff's contention that the SLC improperly trailed in the path set by counsel in the Securities Class Action is without merit.  Instead, the record shows that the SLC did its own detailed review of the process that counsel used to conduct discovery before determining that documents obtained through that process were reliable and germane.  It then went beyond the Securities Class Action, through additional interviews and additional document review, where necessary.  <u>See</u> (SLC Final Rep. 20-21, Dkt.

No. 114, Ex.1); (Furman Dep. Tr. 79-80, Dkt. No. 114, Ex. 11.)  As discussed, to the extent that the probe overlapped with the Class Action, the SLC acted reasonably, given the similarities between the cases.

Particularly persuasive on this question is the absence of evidence in the record illustrating a fact or line of investigation that Defendants missed.  At the end of its endeavor, the SLC had considered hundreds of thousands of relevant documents, had reviewed transcripts and exhibits from the Securities Class Action, had conducted witness interviews, had met with additional members of the Board of Directors, had sought out input from an economic expert, and had intensive discussions about the claims being made with outside counsel.  (SLC Final Rep. 19-26, Dkt. No. 114, Ex.1.)  Nothing appearing in the record, or identified by Plaintiff's counsel at oral argument, points to any significant piece of evidence or a line of inquiry that the SLC ignored.  Instead, the report demonstrates that the SLC thoughtfully and, in good faith, evaluated all of the asserted claims and analyzed the available evidence.  As such, the court finds this to

be a prototypical example of a reasonable, thorough, and good-faith investigation.  See Strougo v. Padges, 27 F. Supp. 2d 442, 453 (S.D.N.Y. 1998).

B.   Zapata Step Two: Independent Business Judgment

The second Zapata element is discretionary.  In this part of the analysis, the court may conclude that it is actually in the best interests of the company to bring suit, and thus decline dismissal of the complaint.

As overwhelming evidence supports the conclusion that the SLC was independent and acted reasonably and in good faith, the court will not get into any separate independent exercise of business judgment as contemplated in the second, optional analytical step.  See Wyilie, 797 F. Supp. at 196 ("This does not appear to be a case in which the result reached was [so] "irrational" or "egregious" as to compel the court to second guess the recommendation of the SLC.")(internal quotations and citations omitted).  As a result, the SLC's decision to bypass litigation will end this case.[9]

_____

[9] Even if, arguendo, the court did engage in this inquiry, it would conclude, based on the gross improbability of success on the merits, that litigation was not in the

-23-

## V.  <u>CONCLUSION</u>

The <u>Zapata</u> inquiry balances two competing interests: on the one hand, the need to hold corporate officers liable when their conduct significantly harms the entity they manage and, on the other hand, the obvious fact that not every piece of litigation on behalf of a corporation is actually in its best interest.  Where an independent committee conducts a reasonable, good-faith investigation, and concludes that filing suit is not the best route, as was the case here, the law prioritizes that latter consideration.

For these reasons, Defendants' Motion for Summary Dismissal of [the] Verified Shareholder Derivative Complaint (Dkt. No. 111) is hereby ALLOWED.  The clerk will enter judgment for Defendants.  The case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge

------

best interests of the corporation.

-24-